IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Audra O., | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) Case No. 3:22-cv-50072 |
| v. | ) |
| | ) Magistrate Judge Margaret J. Schneider |
| Leland Dudek, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Audra O. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for disability insurance benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

**I. Background**

    In July 2019, Plaintiff filed an application for disability insurance benefits, alleging a disability beginning on March 29, 2018, because of left-eye blindness, venous and neurogenic thoracic outlet syndrome, and bipolar disorder. R. 171, 194. Plaintiff was 27 years old on her alleged onset date. Plaintiff's date last insured was December 31, 2023. R. 79.

    Following a hearing, an administrative law judge ("ALJ") issued a decision in March 2021, finding that Plaintiff was not disabled. R. 79–89. The ALJ found that Plaintiff had the following severe impairments: left neurogenic and venous thoracic outlet syndrome with history of left subclavian vein thrombosis. The ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. The ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs that existed in significant numbers in the national economy that she could perform, namely light, unskilled jobs. After the Appeals Council denied Plaintiff's request for review on October 27, 2021, R. 5, Plaintiff filed the instant action. Dkt. 1.

**II. Standard of Review**

    The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as

---

[1] Leland Dudek is substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 12.

1

adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted); s*ee also Warnell*, 97 F.4th at 1054.

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

### III. Discussion

Plaintiff challenges the ALJ's decision, arguing that: (1) the RFC is not supported by substantial evidence; and (2) the ALJ relied on vocational expert testimony without ensuring the reliability of his methodology. As it relates to the RFC determination, Plaintiff argues that the ALJ crafted an RFC that did not fully account for her left arm limitations. For the reasons stated below, this Court agrees that a remand is required for the ALJ to properly explain the basis for the RFC determination as it relates to Plaintiff's ability to use her left arm.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment. 20 C.F.R. § 404.1545(a)(3); Social Security Ruling 96-8p, 1996 WL 374184, at *5. "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ found that Plaintiff had the severe impairments of left neurogenic and venous thoracic outlet syndrome with history of left subclavian vein thrombosis.[3] The ALJ also found that

---

[3] "Thoracic outlet syndrome (TOS) is a group of conditions in which there's pressure on blood vessels or nerves in the area between the neck and shoulder. This space is known as the thoracic outlet. Compression of the blood vessels and nerves can cause shoulder and neck pain. It also can cause numbness in the fingers." Mayo Clinic, Thoracic outlet syndrome, https://www.mayoclinic.org/diseases-conditions/thoracic-outlet-syndrome/symptoms-causes/syc-20353988 (last visited Feb. 27, 2025) [archived at https://perma.cc/J9K9-UABK].

2

Plaintiff's impairments resulted in limitations in her ability to use her left arm. In formulating Plaintiff's RFC, the ALJ evaluated the only two medical opinions in the record addressing Plaintiff's physical functional limitations, namely the opinions from the state agency reviewing physicians and Plaintiff's treating vascular surgeon, Dr. Robert Thompson. The state agency reviewing physicians opined that Plaintiff had no severe medically determinable impairments and found that her combination of impairments did not significantly limit her ability to do basic work activities. R. 57–59, 68. The ALJ did "not find these opinions to be persuasive, as the treatment record fully supports the limitations assessed in the above-referenced residual functional capacity." R. 87.

Accordingly, the ALJ's evaluation of Dr. Thompson's opinion is critical to understanding the RFC determination. The ALJ evaluated Dr. Thompson's opinion as follows:

> In a report dated February 13, 2020, Dr. Thompson opined that the claimant could performed [sic] no sustained overhead activities with the left upper extremity, no prolonged repetitive activities with the left arm, and no lifting, pushing, or pulling more than five pounds with the left upper extremity. Dr. Thompson also opined that the claimant could not return to work at that time (12F). Dr. Thompson repeated more concise but similar assessments in his progress notes (7F/9; 14F). I find the limitations provided by Dr. Thompson to be persuasive, as they are consistent with the claimant's treatment for her condition, which showed her to have complaints of moderately severe symptoms related to the left upper extremity following the April 2018 surgery.

R. 87. [4] In finding Dr. Thompson's opinion persuasive, the ALJ further stated that:

> the limitations opined by Dr. Thompson related to the claimant's thoracic outlet syndrome have been included in the above-assessed residual functional capacity, as they are consistent with the medical evidence of record. The claimant's complaints of pain, numbness, and tingling in the left upper extremity would limit her ability to use the left upper extremity for activities such as reaching, lifting, [ ] handling, and fingering.

R. 86.

Relying on Dr. Thompson's opinion, the ALJ determined that Plaintiff had the RFC to perform light work with the following limitations:

> lifting/carrying five pounds with the non-dominant left upper extremity; no more than occasional reaching overhead with the left upper extremity; no more than frequent reaching in other directions with the left upper extremity; no more than occasional pushing/pulling with the left upper extremity; no more than frequent handling/fingering with the left hand; no more than occasional crawling; no work

---

[4] Dr. Thompson also opined that Plaintiff could not return to work. R. 545. The ALJ did not find that portion of Dr. Thompson's opinion persuasive. R. 87.

3

at unprotected heights; no work near moving mechanical parts; and occasional exposure to extreme cold and heat.

R. 83–84.

As Plaintiff points out, despite finding Dr. Thompson's opined limitations persuasive, the ALJ did not adopt an RFC that restricted Plaintiff to "no prolonged repetitive activities with the left arm." R. 87 (citing R. 545). In evaluating Dr. Thompson's opinion, the ALJ specifically acknowledges this limitation, yet the ALJ adopted an RFC that only limited Plaintiff's use of her left arm to occasional overhead reaching, frequent reaching in all other directions, occasional pushing and pulling, and frequent handling and fingering.

The Court agrees with Plaintiff that the ALJ erred in failing to explain why, after finding Dr. Thompson's opinion persuasive and consistent with the medical evidence of record, he only limited Plaintiff's use of her left arm throughout an 8-hour workday without limiting the repetitive nature of those activities. *See* Social Security Ruling 83-10, 1983 WL 31251, at *5 ("'Occasionally' means occurring from very little up to one-third of the time."); *id.* at *6 ("'Frequent' means occurring from one-third to two-thirds of the time."). Despite explicitly stating that he adopted Dr. Thompson's opined limitations in the RFC, the ALJ appears to have adopted a less restrictive RFC with no explanation or support for why he found Plaintiff capable of prolonged repetitive activities. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

In response, the Commissioner argues that despite finding Dr. Thompson's opinion persuasive, the ALJ was not required to adopt his medical opinion verbatim. An "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians" in making his RFC determination. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). The final responsibility for determining the RFC lies with the ALJ. *See* 20 C.F.R. § 404.1546(c); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."). Although the ALJ was not required to adopt every limitation Dr. Thompson proposed to properly support the RFC, he was still required to "provide a logical bridge between the evidence and [his] conclusions." *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023) (citation omitted). The ALJ failed to provide the required analysis here. Dr. Thompson's opinion is the only medical opinion the ALJ relied on in formulating the RFC and the ALJ stated that he adopted his limitations without qualification. If the ALJ did not mean to adopt Dr. Thompson's limitation on prolonged repetitive activities, he was required to say so clearly and explain why such a limitation was not necessary. The ALJ did not do so here.

Nevertheless, the Commissioner argues that "[r]eading the ALJ's decision as a whole, as this court should, makes it clear that substantial evidence supports the ALJ's determination that Plaintiff was capable of no more than occasional overhead reaching and frequent reaching in other directions, which accounts for Dr. Thompson's limitation of no prolonged or repetitive use of Plaintiff's left arm." Def.'s Resp. at 11, Dkt. 11. The Commissioner then points to Plaintiff's

4

statements about her symptoms, her activities of daily living, and objective medical evidence in the record to argue that substantial evidence supports the RFC determination.

The Court finds the Commissioner's reasoning deficient for two reasons. First, it is not clear to the Court that limiting Plaintiff to occasional overhead reaching and frequent reaching in other directions accounts for Dr. Thompson's limitation to no prolonged repetitive use of Plaintiff's left arm. The ALJ's RFC restricts the amount Plaintiff can reach with her left arm throughout an 8-hour workday (up to two-thirds of the time at most), not the repetitive nature of Plaintiff's left arm activities during that time.

Second, the Commissioner's citation to medical and other evidence in the record to support the RFC ignores the ALJ's explicit reasoning in his decision. For example, the Commissioner cites to Plaintiff's improvement following her April 2018 surgery as a reason to support the RFC. However, the ALJ specifically found Dr. Thompson's limitations persuasive because they *were consistent* with Plaintiff's "complaints of moderately severe symptoms related to the left upper extremity following the April 2018 surgery." R. 87. Moreover, the ALJ also did not cite to Plaintiff's statements about her symptoms or her activities of daily living as a reason to discount Dr. Thompson's proposed limitations. Even if certain evidence could support the ALJ's decision not to limit Plaintiff's repetitive use of her left arm, that alone is not enough. The ALJ was required to connect such evidence to his RFC determination. Accordingly, the Commissioner's "attempt to supply a post-hoc rationale" for the ALJ's decision "runs contrary to the *Chenery* doctrine" and is improper. *Lothridge*, 984 F.3d at 1234–35; *see also Jeske*, 955 F.3d at 587 ("Our review is limited also to the ALJ's rationales; we do not uphold an ALJ's decision by giving it different ground to stand upon.").

The Court finds that the RFC is not supported by substantial evidence in this case. This Court cannot reconcile the ALJ's decision to adopt Dr. Thompson's limitations, finding them persuasive and consistent with the evidence, and yet include less restrictive limitations in the RFC. *See Jarnutowski*, 48 F.4th at 774 ("[A]n ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.") (internal quotation marks and citation omitted). Accordingly, a remand is required for further consideration of Plaintiff's RFC as it relates to the use of her left arm.

In remanding this case, the Court is not suggesting that the evidence requires a more restrictive RFC. Rather, on remand, the ALJ must analyze Dr. Thompson's proposed limitations and either adopt the limitations or adequately explain how the evidence supports his decision to discount them. Although not specifically raised by Plaintiff, the Court notes that on remand the ALJ should pay particular attention to Dr. Thompson's restriction that Plaintiff could not lift, push, or pull more than 5 pounds with her left arm. R. 545. The ALJ only limited Plaintiff to lifting and carrying 5 pounds, without explaining why Plaintiff was not also restricted to 5 pounds for pushing and pulling with her left arm.

In light of this Court's remand for a new RFC determination, it will not address Plaintiff's remaining argument that the ALJ relied on vocational expert testimony without ensuring the reliability of his methodology. However, the Court briefly notes that Plaintiff does not dispute that she did not challenge the vocational expert's methodology during the hearing or in a post-hearing

brief. Although Plaintiff cannot waive the substantial evidence standard, "a claimant may not start objecting to unquestioned and uncontradicted VE testimony in federal court after the closure of the administrative record." *Leisgang v. Kijakazi*, 72 F. 4th 216, 220 (7th Cir. 2023). Accordingly, Plaintiff's counsel should raise all issues argued on appeal with the ALJ on remand. Failure to explicitly raise these issues may result in a waiver if this case is again appealed to this Court.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion to reverse or remand the Commissioner's decision is granted, and the Commissioner's motion for summary judgment is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: February 27, 2025         By: *Margaret J. Schneider*
                                    Margaret J. Schneider
                                    United States Magistrate Judge